IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-01510-CMA-BNB

EDWARD ALLEN,

Plaintiff,

v.

ARISTEDES ZAVARAS,
UNKNOWN STERLING CORRECTIONAL MEDICAL STAFF, and
DR. KREBS,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on defendants Zavaras and Krebs' **Motion for Summary Judgment** [Doc. #40, filed 01/10/2011] (the "Motion").[1] I respectfully RECOMMEND that the Motion be GRANTED.

**I. STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all

---

[1] Discovery closed on December 1, 2010 [Doc. #21]. The plaintiff has not identified the "unknown Sterling Correctional Medical Staff," nor has he sought to amend his Prisoner Complaint to name as a defendant any member of the medical staff.

reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility. *Prisoner Complaint* [Doc. #3] (the "Complaint"),

p. 3.[2] He filed his Complaint on June 28, 2010. The Complaint asserts one claim. The plaintiff alleges that defendant Dr. Stephen Krebs was deliberately indifferent to his medical needs in violation of the Eighth Amendment when he "refused to allow a diagnosis of the plaintiff's lung problem." Id. at p. 4. He states that he is suing defendant Aristedes Zavaras, the Executive Director of the DOC, solely for purposes of injunctive relief, id. at p. 3, because Zavaras "can order that the plaintiff be diagnosed and treated." Id. at pp. 2, 4.

The plaintiff seeks monetary damages, attorneys' fees and costs, and injunctive relief in the form of a diagnosis and treatment for his chest pain. Id. at p. 6.

### III. UNDISPUTED MATERIAL FACTS[3]

1. On October 11, 2009, the plaintiff was evaluated in the medical clinic by nursing staff for a complaint of chest pain. The nurse documented that there was no evidence of respiratory distress, and the plaintiff's vital signs were normal. An EKG was not diagnostic. The nurse discussed the case with the provider in the clinic. The plaintiff was scheduled for an appointment with the provider the following day. *Motion*, Ex. A-1, ¶ 15.

2. On October 12, 2009, the plaintiff was evaluated in the clinic by the provider. The provider documented a benign exam and ordered a chest x-ray. The plaintiff's description of his

---

[2]The Complaint is not consecutively paginated. Therefore, I cite to the pages of the Complaint as they are assigned by the court's docketing system.

[3]The plaintiff does not provide any evidence to create material fact disputes. I am aware that under C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992), a plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn under penalty of perjury. Although the statements contained in the Complaint have been sworn under penalty of perjury, there are few factual statements based on plaintiff's personal knowledge. These statements are not material, and they do not create factual disputes.

pain was not consistent with cardiac etiology.  The description was consistent with a pleuritic nature.  Id. at ¶ 16.

3.   On October 21, 2009, the plaintiff was evaluated by nursing staff for his ongoing complaint of chest pain.  His vital signs were benign, and he did not appear to be in acute distress.  The nurse contacted the provider.  The provider ordered Motrin for pain.  Id. at ¶ 17.

4.   On October 26, 2009, a chest x-ray was performed on the plaintiff.  The result showed no evidence of air space disease.  The aorta was noted to be elastic.  Id. at ¶ 18.

5.   On November 2, 2009, the plaintiff was evaluated in clinic by nursing staff for ongoing complaints of chest pain.  His pain complaint continued to be consistent with a pleuritic nature.  His vital signs were benign.  His blood pressure was slightly elevated at 122/93.  Elevated blood pressure is not expected to cause or contribute to chest pain.  Id. at ¶ 19.  The nurse referred the plaintiff to a provider.  Id. at ¶ 20.

6.   The provider documented that the pain was sharp with inhalation and that the Motrin previously prescribed was helpful.  The plaintiff was in no apparent distress.  His respiratory rate was 14, his pulse was 79, and his blood pressure was 122/93.  A pulmonary exam showed that there was no labored breathing, stridor, or retractions.  The plaintiff's lungs were clear to auscultation.  His heart had a normal rate and rhythm with no abnormal sounds.  An EKG was normal and unchanged from October 11, 2009.  The provider ordered Motrin for the pain and referred the plaintiff to the mental health department for evaluation of depression and anxiety.  The provider educated the plaintiff regarding atypical chest pain.  The plaintiff expressed an understanding of the diagnosis and treatment.  Id.

7. On November 6, 2009, the plaintiff underwent a CT scan of his chest. The radiologist's report documented a normal aorta, clear lungs, and a non-specific 13x14 mm solid nodule in the left posteroinferior costophrenic angle. The radiologist recommended a repeat exam in six weeks. Id. at ¶ 21.

8. On November 12, 2009, the plaintiff was evaluated in the clinic by nursing staff for his complaint of ongoing chest pain. There was no change in the nature or description of the pain. His vital signs were normal. The nurse consulted with the provider. The provider did not change previous treatment orders. Id. at ¶ 22.

9. On December 17, 2009, the plaintiff was evaluated in the clinic by a provider for his complaint of ongoing chest pain. The provider noted that the plaintiff had a chest CT scan in November and discussed the results with him. The clinical examination was unchanged. The plaintiff's vital signs were normal, his lungs were clear, and his cardiac exam was normal. The provider documented that the location of pain reported by the plaintiff was not in the area where the possible nodule was seen on the CT scan. The provider prescribed Motrin for pain and requested a repeat CT scan of the chest to follow-up on the nodule. Id. at ¶ 23.

10. On January 4, 2010, a consult request for a repeat chest CT scan was sent to Physician Health Partners for review and authorization. Because the consult request did not document adequate clinical justification for the repeat CT scan and because a copy of the first CT scan was not sent to Physician Health Partners, the request was denied for inadequate information. Id. at ¶ 24.

11. On February 10, 2010, the provider documented that the consult had been denied. The provider submitted an appeal to Physician Health Partners but did not include a copy of the first CT scan or any additional clinical information. Id. at ¶ 25.

12. On March 3, 2010, the provider submitted a second appeal to Physician Health Partners. The provider included the necessary clinical information and the results of the first CT scan. Id. at ¶ 26.

13. On March 11, 2010, Physician Health Partners authorized the chest CT scan. Id. at ¶ 27.

14. On April 2, 2010, the plaintiff underwent a repeat CT scan of his chest. The radiologist's report documented that the nodule was no longer visible and that the previously documented nodule was most likely atelectasis. Id. at ¶ 28.

15. On July 14, 2010, the plaintiff was evaluated in the clinic for his ongoing complaint of chest pain. The provider documented that she discussed the results of the second chest CT scan with him. The examination revealed that the plaintiff was not in distress, and his vital signs were normal. The plaintiff had tenderness to palpation over his chest wall. The provider prescribed Motrin for pain. The plaintiff had previously indicated that Motrin gave him relief from the pain. The provider also reviewed pursed lip breathing techniques and the use of warm packs with the plaintiff. The plaintiff was advised to return to the clinic by kite as needed. No specific follow-up was necessary. Id. at ¶ 29.

16. Dr. Paula Frantz, Chief Medical Officer for the DOC, reviewed the plaintiff's medical records.[4]  Id. at ¶ 3.  Based on her knowledge and expertise, Dr. Frantz believes that the plaintiff was appropriately evaluated for his complaint of chest pain.  Id. at ¶ 30.

17. According to Dr. Frantz:

(a)  The plaintiff's pain pattern and EKG do not suggest a cardiac etiology;

(b)  The description of the pain was consistent with a pleuritic type of pain;

(c)  Because the repeat chest CT scan did not show any evidence of a pulmonary nodule, no further chest CT scans are indicated;

(d)  The delay in providing the second chest CT scan was due to the provider's failure to provide adequate information to Physician Health Partners;

(e)  A chest CT scan is typically repeated three to six months after incidental detection of a solitary pulmonary nodule, as occurred in this case;

(f)  The incidence of detection of solitary pulmonary nodules by CT scan is now fairly high due to the number of chest CT scans performed annually and the increased detection ability of newer CT scanners;

(g)  Atelectasis is a small area of the lung that is no longer moving air and subsequently collapses;

(h)  The plaintiff's area of atelectasis was very small;

(i)  Because the second chest CT scan did not show evidence of a pulmonary nodule, the small area of atelectasis may have been due to the plaintiff's history of smoking or possible chronic lung disease due to smoking;

---

[4] Dr. Frantz was timely designated as a rebuttal expert in this case [Docs. #44 and #54].

(j)   The plaintiff otherwise has no active symptoms of lung disease except a non-productive cough; his oxygen levels are normal; and active treatment of pulmonary disease is not necessarily indicated at this time;

(k)   The provider appropriately educated the plaintiff concerning interventions he can take to improve the atelectasis such as pursed lip breathing;

(l)   The only other treatment necessary is the use of non-steroidal ant-inflammatory agents such as Motrin on an as-needed basis;

(m)   The evaluation and treatment of the plaintiff has been medically appropriate; and

(n)   The plaintiff did not suffer any injury, permanent disability, or pain caused by the delay in obtaining the second chest CT scan; the treatment provided to the plaintiff was appropriate notwithstanding the short delay; and in light of the results of the second CT scan, no further diagnostic intervention is medically appropriate.  Id. at ¶¶ 32-39.

## IV.   ANALYSIS

The defendants argue that the evidence does not establish deliberate indifference. *Motion*, p. 11.  A prison official's deliberate indifference to an inmate's serious medical needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To establish a claim for deliberate indifference, a plaintiff must prove both an objective component and a subjective component.

The objective component is met if the inmate's medical need is sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hunt v. Uphoff,

199 F.3d 1220, 1224 (10th Cir.1999) (quoting Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective component to a deliberate indifference claim is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### A.  Dr. Krebs

The plaintiff alleges that Dr. Krebs is an employee of Physician Health Partners, *Complaint*, p. 2, ¶ 4, and that medical staff at the Sterling Correctional Facility informed him that Dr. Krebs personally denied the second chest CT scan. Id. at p. 4. The defendants do not provide any evidence to the contrary. The plaintiff further alleges that after he received his second CT scan, medical staff would not explain the results to him. Id. He concludes that Dr. Krebs "refuses to allow a diagnoses of the plaintiff's lung problem." Id.

The record does not contain any evidence that Dr. Krebs knew of an excessive risk to the plaintiff's health and disregarded the risk. To the contrary, the undisputed evidence shows that Physicians Health Partners denied the second request for a chest CT scan because it *did not* receive adequate information, and that when it finally received the additional information, the scan was approved. In addition, it is undisputed that the delay in approving a second CT scan occurred because a provider at the Sterling Correctional Facility failed to provide the information to Physicians Health Partners. There is no evidence that Dr. Krebs was responsible for the delay in approving the second CT scan or that Dr. Krebs refused "to allow a diagnoses of the plaintiff's lung problem."

Moreover, the delay in receiving a second CT scan and the delay in receiving his diagnosis do not rise to the level of a constitutional violation. A "delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." Oxendine v. R.G. Kaplan, M.D., 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotations and citation omitted). "That 'substantial harm' can be the ultimate physical injury caused by the prisoner's illness, so long as the prisoner can show that the more timely receipt of medical treatment would have minimized or prevented the harm." Kikumura v. Osagie, 461 F.3d 1269, 1292 (10th Cir. 2006) (internal quotations and citations omitted). "Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." Hunt, 199 F.3d at 1224. "Officials may also be held liable when the delay results in a lifelong handicap or a permanent loss." Id.

It is undisputed that the plaintiff did not suffer any injury or permanent disability as a result of the delay and that his complaints of pain were not caused by the delay in receiving a second CT scan or a diagnosis. It is further undisputed that the only necessary treatment--the use of Motrin on an as-needed basis--has been provided. "A difference of opinion as to the kind and timing of medical treatment does not rise to the level of an Eighth Amendment violation." Tyler v. Sullivan, 83 F.3d 433, 1996 WL 195295, at *2 (10th Cir. 1996).

### B. Mr. Zavaras

The plaintiff states that he is suing Mr. Zavaras "for injunctive relif [sic] perpouses [sic] only," *Complaint*, p. 3, because "Zavaras can order that the plaintiff be diagnosed and treated."

The plaintiff has failed to create a material fact dispute regarding whether his Eighth Amendment rights were violated. Consequently, he is not entitled to any type of relief.

In addition, an individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The only allegation against Mr. Zavaras is that he "can order that the plaintiff be diagnosed and treated." The record does not contain any evidence to show that Zavaras even knew of the plaintiff's medical condition. The plaintiff is clearly attempting to hold Mr. Zavaras liable merely because he is in a position of authority.

## V.  CONCLUSION

The plaintiff has not offered any evidence that would tend to show liability on the part of either Zavaras or Krebs. Accordingly, I respectfully RECOMMEND that the defendants' Motion for Summary Judgment be GRANTED and that summary judgment enter in favor of the defendants.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and

file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 15, 2011.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge